**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18 CV 391**

| | | |
|---|---|---|
| **ROGER D. ARNOLD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **NANCY A. BERRYHILL,** | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 13).  The Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).  The issues have been fully briefed, and the matter is now ripe for ruling.  Following a review of the record, the parties' filings, and relevant legal authority, the undersigned recommends that Plaintiff's motion for summary judgment be granted and that the Commissioner's motion for summary judgment be denied.

**I.      Procedural History**

On November 21, 2013, Plaintiff filed an application for supplemental security income.  (Transcript of Administrative Record ("T.") 20.)  Plaintiff alleged disability since January 1, 2012 but later amended his alleged onset date to December 18, 2014.  (T. 20.)

The claim was denied initially on April 24, 2014, and upon reconsideration on April 21, 2015.  (T. 20.)

On June 18, 2015, Plaintiff filed a written request for a hearing. (T. 20.)

A video hearing was conducted on May 11, 2017. (T. 20.) Plaintiff appeared in Charlotte, North Carolina, and Administrative Law Judge ("ALJ") John M. Dowling presided over the hearing from St. Louis, Missouri. (T. 20.) Vocational Expert ("VE") Barry J. Brown also appeared at the hearing. (T. 20.) At the time, Plaintiff was represented by Lynne Sizemore, a non-attorney representative. (T. 20.)

On June 16, 2017, the ALJ issued an unfavorable decision. (T. 20-32.) On the same day, Plaintiff requested review of the ALJ's decision. See (T. 1). Plaintiff's request was denied on May 18, 2018. (T. 1-3.)

On July 17, 2018, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See (Doc. 1).

## II.    Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in sequence: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment

2

is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of

3

the evidence that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience.  Id.; Monroe, 826 F.3d at 180.  Typically, the Commissioner satisfies her burden at step five with the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits.  Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III. The ALJ's Decision

In his June 16, 2017 decision, the ALJ found that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act.  (T. 20-32.)  In support of this conclusion, the ALJ made the following specific findings:

(1)     The claimant has not engaged in substantial gainful activity since November 21, 2013, the application date (20 C.F.R. § 416.971 et seq.).

(2)     The claimant has the following severe impairments: diabetes mellitus, hypertension, obesity, a learning disorder, depression and anxiety (20 C.F.R. § 416.920(c)).

(3)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

(4)     The claimant has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except he can frequently climb ramps and stairs, but can only occasionally climb ladders, ropes, and scaffolds.  The

4

claimant can perform simple, routine tasks with only occasional interaction with co-workers and the public.[1]

(5)     The claimant is capable of performing past relevant work as a doffer. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 416.965).

(6)     In the alternative, considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)).[2]

(7)     The claimant has not been under a disability, as defined in the Social Security Act, since November 21, 2013, the date the application was filed (20 C.F.R. § 416.920(f)).

(T. 20-32.)

## IV.     Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996);

---

[1] The regulations define "medium work" as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

[2] The VE testified that Plaintiff could perform the requirements of the following representative medium, unskilled occupations: (1) motor vehicle assembly, which has approximately 318,000 jobs in the United States; and (2) laundry worker, which also has approximately 318,000 jobs in the United States. (T. 32.)

5

accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis

### A. The ALJ evaluated Plaintiff's symptoms properly.

Plaintiff argues that the ALJ's reasons for finding that his symptoms were less severe than alleged are not supported by substantial evidence. Pl.'s Mem. (Doc. 12) at 19-20.

Under the regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594; accord Lewis v. Berryhill, 858 F.3d 858, 865-66 (4th Cir. 2017) (citing 20 C.F.R. § 416.929(b)-(c)[3]). In the first step, the ALJ must determine that objective medical evidence is present to demonstrate that a claimant has a medical impairment that could reasonably be expected to produce the

---

[3] 20 C.F.R. § 416.929 was effective on March 27, 2017. As noted, the ALJ's decision was rendered on June 16, 2017.

6

symptoms alleged.  20 C.F.R. § 416.929(b).

Under the second step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms in order to determine the extent to which they affect his ability to work.  Id. § 416.929(c).  In doing so, the ALJ must evaluate the claimant's statements regarding his symptoms and their effects on his ability to perform work activities.  Id. § 416.929(c)(4). When the ALJ finds the claimant's statements to be less than fully credible, he must support this conclusion by identifying those statements and explaining "how he decided which . . . to believe and which to discredit."  Mascio, 780 F.3d at 640.

Social Security Ruling ("SSR") 16-3p eliminated the term "credibility" because the regulations do not use that term.[4] 2016 WL 1119029, at * 1.  The intent of this change was to clarify that a subjective symptoms evaluation is not meant to be an examination of a claimant's character.  Id.  Consistent with the regulations, ALJs are directed to consider all the evidence found in an individual's record when evaluating the intensity and persistence of symptoms.  Id. at *2.

The following factors from 20 C.F.R. § 416.929(c)(3) are considered when evaluating intensity, persistence, and limiting effects of an individual's symptoms:

(1) Daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

---

[4] SSR 16-3p rescinded SSR 96-7p and applies to ALJ decisions made on or after March 28, 2016. See SSR 16-3p, 2016 WL 1237954, at *1 (Mar. 24, 2016) (correcting the effective date of the original Ruling).  As noted, the ALJ's decision in this case was made on June 16, 2017.  See (T. 20-32).

(4) The type dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

(6) Any measures other than treatment used to relieve pain or other symptoms; and

(7) Any other factors concerning an individual's functional limitations and restrictions caused by pain or other symptoms.

### 1. Plaintiff's work history

Plaintiff generally argues that the ALJ's assessment of his work history is not supported by substantial evidence. Pl.'s Mem. (Doc. 12) at 20-22. Plaintiff contends that the ALJ erred in finding that he worked at a textile mill until 2003, when it closed, because Plaintiff was unsure why he stopped working at the mill. Id. at 20.

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments were not entirely consistent with the medical evidence and other evidence of record. (T. 25.) The ALJ further found: "[T]he claimant work[ed] for many years at an unskilled job in a textile mill, and there is no indication that the claimant received any accommodations. Moreover, the claimant testified that this job ended when the mill closed." (T. 30.) See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations on credibility are to be given great weight because he had the opportunity to observe the claimant's demeanor).

The record reveals that, at his May 11, 2017 hearing before the ALJ, Plaintiff testified that he started working in textile mills at age 16 doing textile spinning. (T. 50-

51.)  Plaintiff explained that he spun and helped stack yarn and bobbins and twisters, and whatever they showed him to do.  (T. 50.)  Plaintiff testified that he and his father grew up in the textile business.  (T. 51.)  Plaintiff suggested that he lifted, at the most, 20 pounds at the mill.  (T. 51-52.)  When asked why he stopped working at the mill, Plaintiff responded, "I think they went out of business, or something, or, you know, or --."  (T. 52.)  Plaintiff testified that he then drew "unemployment or something, and [he] wasn't able to go back to work or find a job."  (T. 52.)  Plaintiff explained that after being laid off when the mill shut down that "there ain't too many mill works around no more like there was back then." (T. 53.)  Plaintiff applied for other work but concluded that "ain't nobody going to hire me for anything."[5] (T. 54.)

The ALJ's references to Plaintiff's work history in this regard were appropriate.

### 2. Plaintiff's activities

Plaintiff contends that the ALJ's assessment of his activities is not supported by substantial evidence.  Pl.'s Mem. (Doc. 12) at 22-23.  In particular, Plaintiff argues that the ALJ misrepresented his activities.  Id. at 22.

"[A]ctivities of daily living is a factor for the ALJ to consider[.]"  Cummings v. Berryhill, No. 8:16-CV-111-CMC-JDA, 2017 WL 9289409, at *10 n.6 (D.S.C. Mar. 22, 2017); see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where the claimant generally took care of the house, cleaned up the local

---

[5] The Commissioner contends that Plaintiff's testimony amounts to an admission against interest. Def.'s Mem. (Doc. 14) at 11.  In particular, the Commissioner contends that the reason Plaintiff is unemployed is not disability.  Id.

poolroom for compensation, shopped for groceries, cooked, washed dishes, and walked to town each day); <u>Smith-Brim v. Colvin</u>, No. PMJ 14-683, 2015 WL 4724977, at *15 (D. Md. Aug. 7, 2015) (upholding a finding of no disability where the claimant reported crocheting, reading, spending time with family, watching television news programs, and using a computer for social networking and email).

In this case, the ALJ concluded Plaintiff's self-reported activity level demonstrated that his impairments were not as severe as alleged. (T. 30.) In support of this conclusion, the ALJ noted the following:

- Plaintiff reported that he could drive locally and help care for his disabled mother. (T. 30.)

- Plaintiff reported that he was able to perform household chores, which included sweeping and vacuuming. (T. 30.)

- Plaintiff reported that he was able to drive. (T. 30.)

- Plaintiff testified that he was able to take a written driver's test. (T. 30.)

- Plaintiff worked for many years at an unskilled job in a textile mill, and there is no indication that he received any special accommodations. (T. 30.)

- Plaintiff testified that his job ended when the mill closed. (T. 30.)

- Plaintiff testified that he can prepare simple meals and care for his personal hygiene. (T. 25.)

- Plaintiff stated he does not leave home often, but he talks to others on the phone. (T. 25.)

- Plaintiff can go shopping. (T. 25.)

The ALJ's finding that Plaintiff's self-reported activity level demonstrated that his impairments were not as severe as alleged is supported by substantial evidence.

### 3.    The ALJ's assumptions

Plaintiff argues that the ALJ's assumptions are unsupported. Pl.'s Mem. (Doc. 12) at 23-24. Plaintiff contends that, by noting multiple times Plaintiff was hospitalized with a stroke and symptoms of syncope but was only diagnosed with Bell's Palsy, the ALJ implied Plaintiff was overstating his impairments. Id. at 23.

In pertinent part, the ALJ found as follows:

> [T]he claimant presented on January 13, 2016, with complaints of stroke symptoms, including facial droop and difficulty speaking. However, CT scan and MRI were negative. Likewise, he did not exhibit any significant abnormalities on examination. In addition, the claimant noted that he was not taking his medications due to financial concerns. Ultimately, the claimant was diagnosed with Bell's palsy and his symptoms were resolved. In a primary care follow-up on January 25, 2016, the claimant reported that he had a stroke, although as noted above, his record indicates that he was only diagnosed with Bell's palsy. On examination, the claimant exhibited some right side facial droop, but otherwise no significant abnormalities.

(T. 26) (internal transcript cites omitted).

The record reveals that Plaintiff was seen by Casey Gilbert, FNP at Gaston Family Health Services on January 25, 2016. (T. 695.) The medical record from that visit provides: "pt here to follow up from the hospital; thought he had a stroke-has had facial drooping since then." (T. 695.)

The January 25, 2016 medical record could be interpreted in multiple ways as it is unclear who thought Plaintiff had a stroke. However, this point is immaterial. The ALJ

11

properly outlined the relevant evidence and any error, if one existed, was harmless. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

### 4. The opinion of Plaintiff's mother

Plaintiff contends that the ALJ's decision to reject his mother's opinion is not supported by substantial evidence. Pl.'s Mem. (Doc. 12) at 24-25. Plaintiff argues that the ALJ did not have the authority to discount his mother's report on the basis that she is not medically trained. Id. at 24-25. Plaintiff further argues that the ALJ failed to acknowledge that his mother's assessment was consistent with Dr. Fiore's test results, which indicated that Plaintiff's memory functions were in the very low range. Id. at 25. Finally, Plaintiff argues that the ALJ lacked the authority to assume that by virtue of her relationship with Plaintiff that his mother is an interested third party. Id. at 25.

Non-medical sources include public and private agencies, other practitioners, educational personnel, and the claimant's family and friends. SSR 16-3p, 2016 WL 1119029, at *7. Non-medical sources may provide information that would be beneficial when "assessing the intensity, persistence, and limiting effects of symptoms." Id.

In this case, in pertinent part, the ALJ found that Plaintiff's mother provided a Third-Party Function Report that included statements regarding Plaintiff's activities of daily living and alleged functional limitations, which were generally consistent with Plaintiff's statements. (T. 29) (citing Ex. 4E). However, the ALJ gave the report "little weight" due

12

to its inconsistency with the objective medical evidence and medical opinions in the record. (T. 29.)  The ALJ also noted that Plaintiff's mother does not have the medical training necessary to make exacting observations regarding dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms.  (T. 29.)  Finally, the ALJ noted that by virtue of her relationship with Plaintiff, Plaintiff's mother cannot be deemed disinterested.  (T. 29.)

The ALJ's decision to give "little weight" to Plaintiff's mother's Third-Party Function Report is supported by substantial evidence, which demonstrates that the ALJ fully considered the opinion as required.  Cf. Limberopoulous v. Shalala, 17 F.3d 975, 979 (7th Cir. 1994), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999) ("[I]t was permissible for the ALJ to discredit the testimony of those interested witnesses that favored plaintiff.").

### 5.    Plaintiff's compliance

Plaintiff argues that the ALJ erred in evaluating his compliance.  Pl.'s Mem. (Doc. 12) at 25-28.  Plaintiff contends that the ALJ appears to question Plaintiff's claim that he has difficulty affording medication and diabetic reagents.  Id. at 25-26. Plaintiff further contends that the ALJ failed to consider his depression, anxiety, or memory impairment when evaluating his compliance.  Id. at 27.  Finally, Plaintiff contends that the ALJ's finding that Plaintiff's symptoms are well controlled when he is compliant is not a true statement as it relates to his diabetes.  Id. at 27.

A claimant must follow prescribed treatment if he is expected to restore his ability

to work, unless there is a reasonable basis for non-compliance. 20 C.F.R. § 416.930.[6] The following provide "good reason" for not following prescribed treatment: (1) the medical treatment is inconsistent with the tenets of a claimant's religion; (2) the prescribed treatment would be cataract surgery for one eye and the other eye has severe vision loss that is not subject to improvement through treatment; (3) surgery that was previously unsuccessful is being recommended again; (4) the recommended treatment, due to its enormity or unusual nature, is very risky; and (5) the recommended treatment entails amputation of an extremity or a major part of an extremity. Id. § 416.930(c). The Commissioner has the burden of demonstrating unjustified non-compliance by substantial evidence. See Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985); Dunston v. Berryhill, No. 5:17-CV-00380-FL, 2018 WL 4576783, at *9 (E.D.N.C. June 5, 2018).

In this case, Plaintiff failed to take his prescribed medication due to an alleged lack of funds. (T. 716.) The ALJ noted, however, that Plaintiff could afford two packs of cigarettes per day. (T. 26, 632, 661, 663.)

A claimant is not penalized for failing to seek treatment he cannot afford. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). However, the ALJ concluded that Plaintiff's claim was not credible because he continued to smoke two packs of cigarettes per day. (T. 26.) See Hill v. Colvin, No. 7:14-cv-171-D, 2015 WL 5147604, at *6 (E.D.N.C. Aug. 10, 2015) ("A claimant's use of income to purchase cigarettes can undercut his allegations that he is unable to afford treatment."); Magwood v. Astrue, No. 6:10-2936-

---

[6] This statute became effective on March 27, 2017, prior to the ALJ's decision in this case.

MBS-KFM, 2011 WL 6257159, at *8 (D.S.C. Nov. 21, 2011) ("The ALJ also [properly] considered the plaintiff's claim that he could not afford treatment, but found the claim was not credible because the plaintiff earned money running errands and was able to buy cigars and alcohol.").

The ALJ did not err by evaluating Plaintiff's compliance in this fashion.

**B.     The ALJ evaluated Mr. Bevis and Dr. Fiore's opinion properly.**

Plaintiff argues that the ALJ did not properly assess the opinions offered by Michael F. Fiore, Ph.D. Pl.'s Mem. (Doc. 12) at 9-12. Plaintiff contends that the limitations found by Dr. Fiore would preclude competitive employment and are well supported by exam and test scores. Id. at 9-10. Plaintiff further contends that the ALJ's decision to reject Dr. Fiore's opinion is based on irrelevant findings. Id. at 12-15.

It is the ALJ's responsibility, not the court's, to determine the weight of the evidence and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal cites omitted); see also 20 C.F.R. § 416.927(c)(6)7 (providing an example of other factors to be considered when weighing a medical opinion); 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly

---

[7] 20 C.F.R. § 416.927 is applicable to claims filed before March 27, 2017. Here, Plaintiff's claim was filed on November 21, 2013.

medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Treating sources are generally given controlling weight with respect to the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c). When, however, a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. SSR 96-2p, 1996 WL 374188, at *2 (1996). In that case, the treating source's opinion must be weighed and evaluated pursuant to the factors set forth in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6). 20 C.F.R. § 416.927(c).

On March 31, 2014, John Bevis, a consultative examiner, conducted a psychological evaluation of Plaintiff, and the resulting report was co-signed by Dr. Fiore. (T. 574.) The mental health examiners diagnosed Plaintiff with the following: depression, secondary to medical problems; generalized anxiety disorder, based on history; and a learning disorder in math and reading. (T. 577.) They opined that Plaintiff had a GAF of 52.[8] (T. 577.) They also noted that Plaintiff helps take care of his mother. (T. 577.) With respect to Plaintiff's ability to work, Mr. Bevis and Dr. Fiore opined as follows:

> He is capable of relating to fellow workers and supervisors at times, but would have difficulties maintaining appropriate interactions on a day-to-day basis due to his multiple medical problems. He does not appear to be capable

---

[8] The GAF score ranges from zero to 100. Hicks v. Berryhill, No. 2:17CV00046, 2019 WL 1434565, at *3 n.7 (W.D. Va. Mar. 29, 2019) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION ("DSM-IV") at 32. A GAF of 51-60 suggests "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning[.]" Id. at *3 n.8 (quoting DSM-IV at 32).

16

of tolerating ongoing stressors, pressures, and demands associated with gainful employment on a day-to-day basis.

(T. 577.)

The ALJ gave Dr. Fiore's opinion "minimal weight" finding that it appeared to rely on Plaintiff's subjective statements and was not fully supported by the medical evidence. (T. 28.) The ALJ found Dr. Fiore's opinion that Plaintiff would have difficulty tolerating the demands of a normal workday to be inconsistent with his GAF score, which indicated only moderate symptoms. (T. 28.) Finally, the ALJ noted that Plaintiff had not been treated by a mental health professional until January of 2016, and the resulting medical opinion was not fully consistent with Dr. Fiore's clinical findings. (T. 28.) In support of his conclusions, the ALJ gave the following examples: Plaintiff exhibited organized and coherent thought content; Plaintiff denied any psychotic symptoms and was fully oriented; Plaintiff exhibited intact recall and recent memory; and Plaintiff reported keeping up with current events and exhibited normal intelligence. (T. 28.)

The ALJ's decision is supported by substantial evidence, including the opinions offered by psychological consultative record reviewers, Judith E. Meyers, Psy.D. and Dr. Jacquelyn A. Harrison, who evaluated Plaintiff's medical records on April 10, 2014 and April 15, 2015, respectively. (T. 79-81, 99-101.)

Dr. Meyers noted that emotional factors and chronic pain may affect Plaintiff's concentration and persistence, but he retains the capacity to concentrate and persist on simple, repetitive tasks. (T. 80.) Dr. Meyers further found that Plaintiff had difficulties with social interaction and would function best in a setting that does not require extensive

social contact.  (T. 81.)  Finally, Dr. Meyers found that Plaintiff <u>could adapt to a setting that requires simple tasks</u>.  (T. 81.)

Dr. Harrison concluded that Plaintiff would have difficulty understanding and remembering detailed instructions related to memory deficits, but he was able to understand and remember simple instructions. (T. 99.)  Dr. Harrison opined that Plaintiff <u>retained the capacity to concentrate and persist on simple, repetitive tasks</u>. (T. 100.)  Dr. Harrison further opined that Plaintiff has difficulties with social interaction and would function best in a setting that does not require extensive social contact.  (T. 100.)  Finally, Dr. Harrison found that Plaintiff <u>could adapt to a setting that requires simple tasks</u>.  (T. 100.)

The ALJ credited the opinions of Drs. Meyers and Harrison when formulating Plaintiff's RFC and discounted the opinion of Mr. Bevis and Dr. Fiore.  <u>See</u> (T. 27-29.)  The ALJ did not err in this regard. <u>See</u> <u>Johnson</u>, 434 F.3d at 657 (recognizing that an ALJ can give "significant weight" to the opinion of a record reviewing medical expert); <u>see also</u> <u>Hughes v. Colvin</u>, No. 1:12-CV-00101-MR-DLH, 2014 WL 1373815, at *4 (W.D.N.C Apr. 8, 2014) (recognizing that the opinions of non-examining state agency medical sources are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims").

The ALJ was not required to accept the opinion offered by Mr. Bevis and Dr. Fiore and gave good reasons for not doing so.  For example, the ALJ noted that Plaintiff reported to Mr. Bevis that he quit his job at the mill due to physical issues and getting along with others (T. 575).  However, as already addressed, other evidence, including Plaintiff's

18

testimony before the ALJ, indicated Plaintiff's job at the mill ended "when the mill closed." (T. 27.) In addition, the ALJ noted that the Bevis-Fiore finding that Plaintiff had a GAF of 52 was inconsistent with the ultimate opinion that Plaintiff could not work. (T. 28.)

### C. The ALJ did not evaluate Plaintiff's RFC properly.

Plaintiff next contends that the ALJ erred in his evaluation of Plaintiff's RFC for three reasons. Pl.'s Mem. (Doc. 12) at 15-19. First, the ALJ failed to include mental limitations identified by a medical source to which he gave great weight. Id. at 16-17. Second, the ALJ failed to consider objective medical evidence of impairment. Id. at 17-18. Third, the ALJ failed to explain how Plaintiff's obesity limits his ability to function. Id. at 18-19.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. In formulating an RFC, the ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1.

### 1. Ability to Interact with Supervisors

Plaintiff contends that the ALJ gave great weight to the opinions offered by the State agency non-examining psychologists but failed, without explanation, to include all the limitations imposed by those reviewers. Pl.'s Mem. (Doc. 12) at 16-17. Plaintiff notes that both psychological record reviewers found that he was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, yet the ALJ failed to address this limitation. Id. at 16.

Drs. Meyers and Harrison opined that Plaintiff was "moderately limited" in his ability to accept instructions and respond appropriately to criticism from supervisors. (T. 81, 100.) Moreover, the ALJ gave "great weight" to the opinions of Drs. Meyers and Harrison. (T. 29.) The ALJ, however, did not address the finding by Drs. Meyers and Harrison that Plaintiff was "moderately limited" in his ability to accept instructions and respond appropriate to criticism from supervisors. See (T. 29).

As the ALJ did not connect the dots between Plaintiff's moderate impairment in his ability to accept instructions and respond appropriately to criticism from supervisors and his RFC finding, the Court cannot find that substantial evidence supports the ALJ's RFC finding, and remand is in order. See Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004) ("The ALJ has not sufficiently connected the dots between [the plaintiff's] impairments, supported by substantial evidence in the record, and the RFC finding."); see also Monroe, 826 F.3d at 189 (recognizing that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion[s]").

### 2.     Ability to understand, remember, or apply information

Plaintiff contends that the ALJ erroneously found that he had no limit on his ability to understand, remember, and apply information.  Pl.'s Mem. (Doc. 12) at 17-18.  Plaintiff further contends that the ALJ failed to explain how his learning disorder would not cause limitations on his ability to understand, remember, and apply information.  Id. at 18.

The ALJ found that Plaintiff had "no limitation" on his ability to understand, remember, and apply information.  (T. 23.)  In support of this conclusion, the ALJ noted the following:

- At Plaintiff's psychological consultative examination, he exhibited organized and coherent thought content.

- Plaintiff denied psychotic symptoms and was fully oriented.

- Plaintiff exhibited intact recall and recent memory.

- Plaintiff reported keeping up with current events.

- Plaintiff exhibited normal intelligence.

- Plaintiff alleged lifelong mental health symptoms, but he did not present for care with a mental health professional until January 2016.

(T. 23.)

Though the reasons cited do support the ALJ's finding, the opinion of Dr. Harrison does not.  As discussed above, Dr. Harrison found that, while Plaintiff was able to understand and remember simple instructions, Plaintiff would have difficulty understanding and remembering detailed instructions related to memory deficits.  (T. 99.)

Particularly as the ALJ gave "great weight" to Dr. Harrison's opinion when formulating Plaintiff's RFC, this discrepancy is problematic. Therefore, remand is also warranted on this basis.

With respect to his learning disorder, the ALJ found that Plaintiff's allegations of disabling mental impairments were not credible. (T. 30.) In support, the ALJ found as follows: Plaintiff's medical records undercut his allegations. (T. 30.) Plaintiff's education records indicated only poor to average academic achievement. (T. 30.) Plaintiff could take a written driving test. (T. 30.) Plaintiff worked for many years at an unskilled job, and there is no indication he received special accommodations. (T. 30.) The ALJ's conclusion in this regard is supported by substantial evidence.

### 3. Obesity

Finally, Plaintiff argues that the ALJ found that his obesity was a severe impairment, yet the ALJ's decision failed to address how his obesity limits his ability to function. (Doc. 12) at 18-19.

Obesity is defined as "a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)." SSR 02-1p, 2002 WL 34686281, at *2 (2002).[9] An individual with a body mass index (BMI) of 30.0 or above is deemed obese. Id. When a claimant is obese, the ALJ must evaluate the obesity in determining the following: (1) whether the claimant has a medically determinable impairment; (2) whether it is a

---

[9] SSR 02-1p superseded SSR 00-3p.

severe impairment; (3) whether it is a factor in meeting or equaling a listed impairment; (4) and whether it impacts an individual's ability to do past relevant work or other work that exists in significant numbers in the national economy.  Id. at *3; see Sawyer v. Astrue, 775 F. Supp. 2d 829, 839 (E.D.N.C. 2011).

"[I]t is the claimant's burden to provide evidence of the functional limitations caused by severe impairment, including obesity."  White v. Comm'r, Soc. Sec. Admin., No. SAG-16-506, 2017 WL 1102719, at *2 (D. Md. Mar. 23, 2017).

In the instant case, at step two in the sequential evaluation, the ALJ found that Plaintiff's obesity was a severe impairment.  (T. 22.)  Then, at step three, in pertinent part, the ALJ found:

> In this case, the claimant's obesity and diabetes, either alone or in combination with the claimant's other impairments, are not of listing level severity.  Specifically, the claimant retains the ability to ambulate effectively, and similarly, the claimant's other listed severe impairments, although worsened by the claimant's obesity and diabetes, are not of listing level severity.

(T. 23.)

Plaintiff has failed to demonstrate functional limitations not accounted for by the ALJ.  The ALJ's obesity analysis is supported by substantial evidence.

## VI.    Recommendation

Considering the foregoing, it is RECOMMENDED:

1.  That Plaintiff's motion for summary judgment (Doc. 11) be GRANTED, and this case be REMANDED for further proceedings pursuant to sentence four of § 405(g), and

2.  That the Commissioner's motion for summary judgment (Doc. 13) be DENIED.

Signed: June 12, 2019

W. Carleton Metcalf
United States Magistrate Judge

**<u>Time for Objections</u>**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).